May it please the Court, my name is William Cole from the U.S. Department of Justice. This case involves a tragic car crash. It resulted in a spinal cord injury. These injuries are always devastating. Certainly it was tragic here for the four-year-old Leilani Gutierrez. The government accepted responsibility for this accident and presented evidence to the district court that lifetime care for Ms. Gutierrez would cost about $8 million. Based on a shortened life expectancy. Based on a shortened life expectancy. The shortened life expectancy, as accepted by the plaintiff's experts, called for a great deal more money to be used to cover the economic damages of this child. And the district court accepted the plaintiff's view of the cost for the future care, which was close to $23 million. That amount is not at issue here. That amount is not at issue. In fact, that amount, plus a million dollars for Ms. Gutierrez's mother, plus the cost of future wages that were expected to be earned, added up to about $24 million, more than $24 million, all of which were paid last year by the federal government. What we are— Can I just ask a question if you know the answer to it? I'm always curious about that in a case this size. Does this minor child have a guardian ad litem or a financial guardianship of some kind where there's control over this amount of money other than just a parent? I think my understanding was that the guardian ad litem was Ms. Gutierrez's mother, but I think opposing counsel will be able to answer that question. All right. I cannot. We are appealing in this before this court an additional amount of money, $31 million, that was awarded basically for pain and suffering. All right. Now, as the appeal comes before us, in your appeal, in the brief, I didn't see where you challenged any of the district court's findings of fact. That's correct. Is that right? That's right. So the focus here is just on the district court judge's determination of what is the appropriate amount. What is the appropriate amount of non-economic damages. And how much discretion do we have to review that determination? Well, obviously, the standard of review here is clear error, but we look to the Felder decision by this court to determine what discretion the court has. And what the court said in the Felder case was that it was not bound by a state determination as to the discretion of a court to decide from a jury verdict. It instead looked to the Supreme Court's U.S. versus U.S. gypsum determination that a reviewing court may accept the entire evidence that was presented, but if it is left with a definite and firm conviction that a mistake has been committed, then it can make up its own mind as to the proper amount of damages that should be awarded. That sounds like a pretty high standard. It is a fairly high standard, but as this court has determined in many other cases that we have cited, particularly the ones from Washington State and Alaska, the court has been willing to look at judgments on non-economic damages, determine whether a mistake has been committed there, without saying that there was passion or corruption or prejudice, and say clearly there was a mistake made here that needs to be rectified. And we believe that where... You mean they filled in the figure wrong? I mean, what kind of mistake did they make? It's a judgment based on facts. That's right. Is a factual determination erroneous? This is a fact determination as to how much money someone should receive to cover an incalculable damage. And the standard is reasonableness, right? Well, the standard, as I said, was that one from the gypsum case. Whether a mistake has been committed. And we believe in the cases, the Shaw, Trevino, McCarthy, Scott, Yonko decisions, that this court found that an appropriate amount for non-economic damages, in addition to the 24-hour, seven-day-a-week care that an injured infant will receive from economic damages, was, under those cases, between one and two million dollars. Is that what you asked the district court for a reward in this case? We did not give a specific amount that we were asking for from the district court. We simply said look at the cases and do as has been required by this court, and that is look at each case individually and try to determine... So as you ask, as you argue to us, this amount is just too much. Well, let me, hear me out for a second. Or in your words, as you just phrased, obviously there was a mistake made here. It's the largest ever awarded against the government. Hold on. Just wait one second, sir. So is it your argument that, one, this is the largest amount ever, and therefore it must be a mistake? Two, if you look at these other cases in our case law from years ago, those amounts are one to two million, so therefore there must be a mistake. What else? Well, let's see. We have discussed ratio analysis, which was something... Where does that come from? Well, that comes from most recently from the Arpin decision in the Seventh Circuit that was looking at an FTCA case, and it looked back at decisions that were made on punitive damages cases by the Supreme Court. Well, now we're not dealing with punitive damages here. And Arpin was not a punitive damages case, but it was arguing by analogy. Well, but is there really an analogy there, Mr. Cole? I mean, the punitive damages cases say that because punitive damages are a penalty, they're not compensation, the penalty should be proportionate to the harm that the defendant causes. Applied in this case, we're somehow saying that the non-economic damages should be proportional to the economic damages, but what's the connection between those? There can be a case with low economic damages and very high non-economic damages and vice versa. So how does the ratio logic apply in this kind of a case, notwithstanding what Judge Posner said? I think Your Honor is absolutely right. There can be cases where there are very low economic damages and yet should be high non-economic damages. But we're dealing with a particular type of case here, and that is where you have an injured child who will require 24-hour care, seven days a week for the remainder of her life, and thus will have enormous expenses that will take up, and care that will take up her entire existence for the rest of her life. In those circumstances, we say that there is an analogy that can be made, that the amount of non-economic damages should have some relationship to that total amount. And they did, in fact, in all the cases that I have named, the ones from this court, the Trevino, Shaw, McCarthy, et cetera. To what extent does California law play in this determination? I think California determinations, albeit that most of them are going to be jury decisions, and thus will be different than here. But it tells us something. It does. That's right. And we're looking, as Judge Campbell said, we're looking to see what kind of relationships we can come up with, what we can draw to make a reasonable determination of what these incalculable damages should be. One other thing that we can look at is the California legislature's determination regarding medical cases, where it set a cap of $250,000 on medical practice. I suppose Congress, in all its wisdom, could put a cap in these kinds of cases, in FDA cases. It could. It has not done so. It hasn't done so. But this... Does it take anything from that? No, I don't think so, because this court has, again, looking back to the Felder decision, has said that we must maintain some degree of uniformity in cases involving similar issues on this particular topic, and, and I quote here, we wish it to be understood that there must be some limit on these incalculable damages, end quote. And that is to keep situations from arising as has happened here, where we have one judge making a determination as to what an incalculable harm is worth, and deciding this case, it will be $31 million in spite of, as we've said, about six cases that this court has determined, where children with the same level of harm done to them have received far less. Did... Could you agree with the observation that Judge Stotler is an extremely experienced trial judge that's been with the district court in Los Angeles for a prolonged period of time and has had much more exposure probably to personal injury damages in Los Angeles County than anybody on the bench here? I cannot disagree with that. You can't agree to that? I will, I will not disagree with that. Okay. I don't recall, maybe you can enlighten me, but did the government move for a new trial or for a remediative? No, it did not. This was a decision that, as we all know, was made by the district judge on the basis of what she saw in trial. There was no expectation that... I mean, we had submitted evidence that we thought indicated a lower amount would be appropriate. Her decision was, as an individual judge, that $31 million should be paid to this child in addition to the amount of money that was required to keep it, keep her with full medical support for the rest of her life. We just happened to think that was necessary. Would you like to serve some time for rebuttal? I would. Thank you. Thank you, Your Honors. This is, my name is Wiley Aiken on behalf of Leilani Gutierrez. In answer to your question, Justice Beezer, they only in the last few days of last year paid the money. It's now pending before Judge Stotler. There will be life care plans. Okay, it's just some monitoring and some control on it other than just family. There will be absolutely a lot of complete control, Your Honor. Okay, thanks. Let me then address some of the issues that were raised here. Number one, on the issue of the standard of review, I've had trouble struggling with whether or not the definite and firm conviction is more complex or less than the California standard of passion and prejudice and shocking the conscience, a standard that they repeat continually throughout their briefs. So there's no question there are two issues here on the standard of review. Number one, they acknowledge that you must give significant, as well you should, I know all of you as experienced trial judges understand, you must give a good deal of deference to the trial judge. And then when you give that deference to the trial judge, you have to identify some type of firm conviction in your own personal minds that there's some definite error, none of which has ever been established in this case, and in fact not a single finding of fact over the numerous pages outlined in such great detail by former Chief Judge Alice Marie Stotler has ever been challenged in this case. Not only was it not challenged at the trial court level, they themselves, as you know, objected to any type of comparative analysis, which is different than the ratio. And not only that, in final argument, they refused to give any figure whatsoever, did not give her any direction, did not suggest she look at other cases or follow the corresponding law, but what they did say, which is repeated in every single case in the Ninth Circuit, is every single case is unique, every single case needs to be decided on its own facts and its own circumstances, which of course is what happened in this particular case. The reality in this case is that, and the court I know is well aware of the nature and extent of the injury, they originally put out, and it was some question I know that was raised by Justice Paez about the issue of what about California law. What the Federal Court Claims Act says is that every single citizen in this state should be given the same exact rights and privileges against the federal government as if the federal government was a private citizen. So they stand before you as a private citizen in the state of California. So that is overwhelmingly significant in terms of the analysis. They also, of course, set the rules. They set the rules that say that we're going to not allow you to have a jury trial. You're going to have to have this case tried not in front of a jury of your peers, but you're going to have it tried before a federal district judge. So they had the benefit of the rules. The only thing that they had to do was to be judged as if they were a private citizen in the state of California. And all throughout this situation, before pretrial, they never would give any figure or analysis. During the entire trial, in terms of general damages, non-economic damages, they would give absolutely no guidance. After the trial, when they had the findings of fact and the conclusions of law, they made no post-trial motion whatsoever of any type to challenge any single finding or make any suggestion of any case that you should read, any analysis. All of this suddenly magically appeared in front of this court by cherry-picking cases throughout the Ninth Circuit. So that is what the reposition is. And even worse, as a post-trial maneuver, after the case was announced, after the verdict was given, they went to the media and said how happy they were that this case had been resolved and how happy they were that Leilani Gutierrez had received this money. So they publicly took a position in support. And the first time that we see the arguments that we're hearing here today were raised in their appellate briefs because we were anxious to see and hear what was the basis of this argument. What was the basis of the appeal in light of every action they had taken up to that moment? Let me say that one thing we all know is that overwhelmingly in every single case in the Ninth Circuit, they say you must look at each case on its individual basis. I can honestly tell this court, after 40 years of practice in this field, I have never experienced a case where you're dealing with a four-year-old who is a permanent quadriplegic, who is dependent on a ventilator, and who, unlike these other cases they cite, has absolute and complete understanding every day, every moment of what she is going through. She understands each day what the experience is. This is not a vegetative state. This is not a state where she is delusional and doesn't understand what's going on around her. That 24-hour care and all it entails, and the entire destruction of life, that all it entails, is absolutely understood for every second and every moment by this young girl who was four and now is 11 years of age. And in the careful analysis of Judge Stotler, she continually made clear, direct findings about what was being experienced and clearly making an analysis that, in fact, could be considered conservative. Conservative in this respect. Their poster child initially was the Buell case. Which case? The Buell case, Buell v. Wilson case. That was their poster child that they cited where the damages were approximately 4.5 million and the economic damages were 18 million. But that involved a lady well into her 40s who had life expectancy similar to Leilani, but she was a paraplegic. And the difference between being paraplegic and a ventilator quadriplegic is like day and night. And even that verdict that they cited had a tremendous amount of much, much higher ratio if one were to want to go down the nonsensical ratio path. It was much dramatically higher than this case. And so they had to back away from it with a new argument. And that new argument was, well, the larger your damage, the larger your loss, the higher the economics, there should be some corresponding drop in your non-economic loss. Which is an intellectual disconnect. Mr. Aitken, let me interrupt you for a minute. Those arguments have been well laid out in the brief. Thank you. I'd like to ask you something that wasn't raised in either brief but has troubled me as I've read Judge Stotler's decision. In paragraph seven of the conclusions of law, she says that the economic damages will be reduced to present value. But the non-economic damages, the 31 million, will not be reduced to present value. And she cites a California case, the Salgado case, and she cites a jury instruction from California to say they shouldn't be reduced to present value. Salgado and that jury instruction say that the amount for non-economic damages should be a present value amount. That's what the jury should award. That's not what Judge Stotler did. She said, I'm going to give this young girl a million dollars a year for 31 years, therefore I'm going to give her 31 million dollars. Well, the present value of 31 million dollars, even if you assume a discount rate of 3%, is 20 million. Or 5%, it's about 15 million. Or 1%. Whatever you do in today's world. But the point is, the law she cited suggested that the amount she was supposed to award for non-economic damage was present value. And yet she clearly didn't give a present value amount, because she was giving a million dollars a year, but she didn't discount it. I can assure you, Your Honor, and I'm glad to give direct authority on this issue, but I can assure the Court that under California law, and California law of damage, which the Ninth Circuit has many times acknowledged they must follow in federal court claims act cases, you do not reduce the present cash value, the amount of damage for the general damages. That is, pain and suffering damages are clearly not reduced by cash value. But the California Supreme Court said the reason you don't do that is because it is presumed that the trier of fact awards a present value amount. They said in the Salgado case, they say to avoid confusion regarding the jury's task in future cases, we conclude that when future non-economic damages are sought, the jury should be instructed expressly that they are to assume that an award of future damages is a present value sum. And then they go on to say, in the absence of such an instruction, unless the record clearly establishes otherwise, awards of future damages will be considered to be stated in terms of their present value. So the assumption we have to take under California law is that the 31 million that Judge Stotler awarded is a present value number. And if that's true, it's inconsistent with her finding that this young girl should receive a million dollars a year. It's far more than a million dollars a year if it's a present value number. My understanding, and I'll be glad to look at it very closely again, but I've been dealing with it for so long, Your Honor, is that when you talk about the present value, what is the present value to her of her loss, and that loss is a million dollars a year, and it will continue to be a million dollars a year for the rest of her life. And that amount, it does not get reduced. It does not get reduced, and it's not even reduced either intellectually or legally, either in the minds of the jurors or in the district. Never raised this issue, correct? That's correct. Didn't raise it before the district court? Absolutely not. Didn't raise it on a motion for retrial? Absolutely not. It's never been raised in this case, and it's never been raised to Judge Stotler, and it's never been raised until Justice Campbell raised an interesting question in terms of his review of the Saldado case. It's never been brought, and we've all had abundant opportunities to present our points and authorities and the facts and the law, and it would clearly be, at least under any interpretation of the law, based on the waiver and estoppel. That would be a clear waiver and estoppel, because had that been the criteria that we were dealing with, then we could have taken it up and could have dealt with it at that point in time and could have presented the arguments pro and con in the analysis. I think that based on everything that was given universally and collectively and jointly by both sides in this case, she clearly followed that direction and followed a clear understanding of the law as agreed to by both parties and based on her own analysis. Mr. Rankin, you have a lifetime experience in tort litigation in California. Is the amount of damages that were, non-economic damages that were awarded here, are they really, as the government says, just entirely out of line? Your Honor, I mean, I guess, of course, my answer is no. And I can say that very strongly in many respects. If you look at the cases, if you look at the Buell case, for instance, clearly that case was of substantially less damage and involved substantially less injury. There are other cases in the trial level, which we've cited, where there have been substantial awards equal or greater than the particular award in this case. I stand here not as the lawyer who got the highest verdict ever in a federal tort claims-asked case, though I question whether that's true or not. I stand here because, not because I'm a good lawyer, I stand here because of what happened to this young girl and the overwhelming impact. Because here you have an experienced judge who is not going to be overwhelmed by words or emotion, who is going to look at this case very analytically. And, yes, it's a large case, but you know what, I will clearly suggest to this Court that in our lifetime, all of us sitting in this courtroom in our lifetime, we will not be as devastating as the one that sits before this Court. It took me 40 years to see one. I do not expect to travel that way again. Thank you. I believe the government has a little over two minutes for a rebuttal. I would like to address one remark to Judge Campbell regarding the question of reducing the present value of the $1 million a year and explain that the government did consider that possibility. But we were hung up on the finding of fact in Section 2, Number 54, where the Court determined that the evidence established that reasonable compensation averaged the sum of $1 million a year. And when we saw that averages, we thought that that might have well indicated that there had been a reduction to present value. And what that points out is that the amount of money here is actually considerably more than just $1 million a year, because it would indicate that there is more money here, and it has been reduced, and it still ends up $31 million in non-economic damages, as I have said, the largest number that we have dealt with, that we are aware of in any case that has been decided against the government under the Federal Tort Claims Act since its inception. If there are no more questions. I have one question, Mr. Aitken. I'm sorry, Mr. Cole. Mr. Aitken has asserted that you can't describe or identify a comparable injury, a 4-year-old girl fully conscious of these limitations and pains for the rest of her life. Do you agree with that? No, I don't, and every time that you have a spinal cord injury, it's devastating, and the closer to the skull that that break in the spinal cord occurs,  I don't think that it is that much different than one of the cases from California that we cited, and that's the Niles v. City of San Rafael case, where there was an 11-year-old who was paralyzed from the neck down, and that's basically what we have here, is paralysis from the neck down. And in that case, and it was 1974, so it's over 30 years ago, that was a non-economic injury. And the point damage is a reward of $1.6 million. Any other questions? Thank you very much.
judges: Beezer, Paez, Campbell